UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60016-CIV-MARRA (Consolidated Case)

In re: Maylene Abad

      Appellant.

_____/

Associated Case 12-CIV-60033

In re: David Marshall Brown,

      Appellant.

_____/

Associated Cases: 12-CIV-60016
12-CIV-60030

In re: Maite L. Diaz,

      Appellant.

_____/

Associated Cases: 12-CIV-60114
12-CV-60081
12-CV-60090

## ORDER

**THIS CAUSE** is before the Court upon three appeals of an Order of the

Bankruptcy Court Sanctioning Attorneys.  *In re MacFarland*, 462 B.R. 857 (Bankr. S.D.

Fla. 2011).  The Order sanctioned six attorneys; only three have appealed.  Appellant

Maylene Abad ("Abad") was suspended from practicing bankruptcy law in the

Southern District of Florida for a period of 31 days in *In re Hector De Pena*,

Bankruptcy Case No. 11-BK-14554-JKO; Appellant, David Marshall Brown ("Brown")

was suspended from practicing bankruptcy law in the Southern District of Florida for a

period of 31 days in *In re MacFarland*, Bankruptcy Case No. 11-BK-13345-JKO, to run

consecutively with a similar suspension in *In re Lewis*, Bankruptcy Case No. 10-BK-

40253-JKO, for a total suspension of 62 days; Appellant, Maite L. Diaz ("Diaz") was

suspended from practicing bankruptcy law in the Southern District of Florida for a period of 31 days in *In re Onelia Hurtado*, Bankruptcy Case No. 10-BK-48589-JKO, to run consecutively with a similar suspension in *In re Garcia*, Bankruptcy Case No. 10-BK-43602-JKO, to run consecutively with a similar suspension in *In re Santana*, Bankruptcy Case No. 11-BK-11106-JKO, for a total suspension of 93 days (Abad, Brown and Diaz, together, "Appellants").  This Court entered an order consolidating the three appeals and staying the sanctions pending this ruling.  The Court has carefully considered the appeals, the briefs of appellants, the brief of *Amici Curiae,* reply briefs when filed, the entire bankruptcy record, and is otherwise fully advised in the premises.

## Background

On November 10, 2011, the Bankruptcy Court issued an <u>Order Sanctioning Attorneys</u>, sanctioning six attorneys.  *In re MacFarland*, 462 B.R. 857 (Bankr. S.D. Fla. 2011) ("Omnibus Order").  The Omnibus Order and these appeals stem from Appellants objecting to unsupported proofs of claims filed by creditors in Chapter 13 bankruptcy cases.

The Bankruptcy Court perceived the objections to the claims as baseless and tantamount to bad faith, justifying the imposition of sanctions:  "Debtors' counsel violate ethical duties by: (1) objecting to a claim for lack of documentation when the debt was scheduled in substantially the same or greater amount; (2) 'disputing' liability or amount with no substantial basis; or (3) seeking to strike and disallow a

claim in its entirety when any portion of the debt is undisputedly due and owing." *In re MacFarland*, 462 B.R. at 881.  The Bankruptcy Court entered the Omnibus Order with "a singular aim - to address what has become a pervasive problem within this district stemming from wholesale unjustified claim objections, and to stop that practice."  462 B.R. at 883.

**Legal Standard**

"Federal courts, including bankruptcy courts, have the inherent power to impose sanctions on parties and lawyers."  *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008); *see also In re Mroz*, 65 F.3d 1567, 1574 (11th Cir. 1995); *In re Evergreen Security, Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009).  "This power is derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  *Evergreen*, 570 F.3d at 1263 (quoting *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006)).

Bankruptcy courts have authority under 11 U.S.C. § 105(a) to suspend or disbar attorneys.  Local Rules of the Southern District Florida Bankruptcy Court 1001-1(D); 2090-1; 2090-2; *In re Brooks-Hamilton*, 400 B.R. 238, 246 (9th Cir. B.A.P. 2009).  The court may *sua sponte* take any action or make any determination "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  *Id*.  Under the Bankruptcy Court's Local Rules, a single judge has the authority to discipline an attorney, including the authority to suspend him from practice after providing notice and a hearing:

> Upon order to show cause entered by at least one judge, any attorney
> appearing before the court may, after 30 days' notice and hearing and
> for good cause shown, be suspended from practice before the court ...
> or otherwise disciplined, by a judge whose order to show cause initiated
> the disciplinary proceedings.

Bankr. S.D. Fla. R. 2090-2(B)(1).

In reviewing an order sanctioning an attorney, the district court uses an abuse

of discretion standard. *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1321

(11th Cir. 2002); *Munnings v. Fedex Ground Package Systems, Inc.*, 2008 WL 1849003,

at *4 (M.D. Fla. Apr. 22, 2008). Under that standard, this Court must affirm unless it

finds that the Bankruptcy Court made a clear error of judgment or applied the wrong

legal standard. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238

(11th Cir. 2007). "'The application of an abuse-of-discretion review recognizes the

range of possible conclusions the [bankruptcy court] may reach.'" *Norelus v. Denny's,*

*Inc.*, 628 F.3d 1270, 1280 (11th Cir. 2010) (quoting *United States v. Frazier*, 387 F.3d

1244, 1259 (11th Cir. 2004) (en banc)).

The Court begins with the legal standard that governs the imposition of

sanctions in this case. The Bankruptcy Court grounded its sanctions order on Federal

Rule of Bankruptcy Procedure 9011 ("Rule 9011"). Rule 9011 governs the signing and

verification of papers filed with the court and, therefore, provides authority for

imposition of sanctions for bad-faith filings. *In re Bellew*, 71 B.R. 72 (Bankr. M.D. Fla.

1987); *In re Smail*, 129 B.R. 676 (Bankr. M.D. Fla. 1991). *See also, In re McBride*

*Estates, Ltd.*, 154 B.R. 339 (Bankr. N.D. Fla. 1993); *In re Coones Ranch, Inc.*, 7 F.3d

740 (8th Cir. 1993).

Rule 9011 provides that sanctions are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose. *In re Mroz* 65 F.3d 1567, 1572 (11th Cir. 1995). "In other words, we must inquire whether she would have been aware that it was frivolous if she had conducted a reasonable inquiry." *Id*. The bankruptcy code permits sanctions only if the objectionable court paper is signed in violation of the rule. *See* Bankruptcy Rule 9011; *Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995).

While bad faith is the key to unlocking the court's inherent power, a court must do more than conclude that a party acted in bad faith; it should make specific findings as to the party's conduct that warrants sanctioning. *In re Gleason*, 2012 WL 4857014, *3 (11th Cir. Oct. 15, 2012) (citing *In re Porto*, 645 F.3d 1294, 1304 (11th Cir. 2011)) (to support a finding of bad faith, the bankruptcy court should make specific findings about the party's conduct that warrants sanctions). In this case, the Bankruptcy Court erred when it concluded that Appellants filed objections to proofs of claim in bad faith or for an improper purpose. This Court concludes the Bankruptcy Court gave inadequate consideration to Appellants' intent and reasoning in making the objections. The Court also concludes that the record supports a finding of good faith conduct on the part of Appellants.

**Relevant History and Facts**

**Maylene Abad**

Debtor Hector De Pena filed his Voluntary Petition for Relief pursuant to Chapter 13 and timely filed his Schedules on March 22, 2011.  Claims were filed corresponding to a number of the scheduled debts, and Mr. De Pena's attorney, Abad, filed objections to proofs of claims made by two creditors, Candica, LLC, and Portfolio Recovery Associates, LLC.  *See* DE 2-4 at 9-10 in 12-60033-CV.  Both of these objections related to debts which were scheduled as noncontingent, liquidated, and undisputed.  Additionally, each proof of claim contained sufficient information for Abad to surmise to which of the scheduled debts the claim probably related. Nonetheless, Abad filed the following claim objections:

Pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1(B)(2), the debtor objects to the following claims filed in this case:

**Claim Number 2: CANDICA, L.L.C.**

**Basis for Objection:** The claim fails to attach a statement or documentation which would show a claim due. Further, the creditor fails to show a chain of assignment of the debt from the original creditor to the creditor herein, Candica, L.L.C. and as such the creditor fails to show a right to money due. Additionally, the debtor was never notified that a debt was assigned to Candica, L.L.C. from the original creditor pursuant to Florida Statutes prior to the bankruptcy filing. Candica, L.L.C. lacks standing to file this claim on behalf of the original creditor. Further, [the] claim is filed in violation of Local Rule 3001-1(A)(3), as the claim is a proof based on a writing, and does not attach a list or summary of invoices or other attachments and documentation to show that Debtor owes the actual amount claimed, or had any type of contractual relationship with claimant, such as the account application or contract or most recent statement provided to the Debtor prior to the filing date.

**Recommended Disposition: The claim should be stricken and disallowed**.

   **Claim Number 3: Portfolio Recovery Associates, LLC**

   **Basis for Objection:** The claim fails to attach a statement or documentation which would show a claim due. Further, the creditor fails to show a chain of assignment of the debt from the original creditor and/or Professional Bureau of Collections of Maryland, Inc. to the creditor herein, Portfolio Recovery Associates, LLC and as such the creditor fails to show a right to money due. Additionally, the debtor was never notified that a debt was assigned to Portfolio Recovery Associates, LLC from the original creditor pursuant to Florida Statutes prior to the bankruptcy filing. Portfolio Recovery Associates, LLC lacks standing to file this claim on behalf of the original creditor. Further, [the] claim is filed in violation of Local Rule 3001-1(A)(3), as the claim is a proof based on a writing, and does not attach a list or summary of invoices or other attachments and documentation to show that Debtor owes the actual amount claimed, or had any type of contractual relationship with claimant, such as the account application or contract or most recent statement provided to the Debtor prior to the filing date.

**Recommended Disposition: The claim should be stricken and disallowed**.

DE 2-4 at 9-10 in 12-60033-CV.  No affidavit or any other document to support these

objections were attached.

   These objections were duly noticed and set for hearing.  On August 10, 2011,

Abad attended the hearing on the debtor's behalf.  No creditors appeared at the

hearing and no other interested party objected to the relief sought.  Counsel

provided proposed orders striking and disallowing the claims by default.  Instead of

signing the proposed orders, however, on September 12, 2011, the Bankruptcy Court

issued a 19-page Order to Show Cause addressing what the court characterized as a

pattern of Chapter 13 debtors' attorneys filing bad faith objections to creditor

claims.  The bankruptcy judge's order addressed this perceived pattern in seven

different cases.  In the De Pena case, the Court held,

> [b]oth of the above [objections to Candica's and Portfolio Recovery's
> claims] were scheduled as noncontingent, liquidated, undisputed debts,
> and each proof of claim contained sufficient information for debtor's
> counsel to match the claims with the scheduled debts.  Nonetheless, Mr.
> De Pena's attorney objected to each claim on the basis of lack of
> documentation.  Debtor's counsel submitted proposed orders striking
> the claims when the debtor had conceded in his schedules that the
> debts were due and owing in substantially the same amounts.  It
> accordingly appears that Mr. De Pena's attorney filed both of the above
> objections in violation of Fed. R. Bankr. P. 9011(b).

12-civ-60033, DE 2-4 at 35 of 36.  The order set the show-cause hearings for October

12, 2011 and directed counsel in each of the seven cases to appear and

> articulate cause why sanctions should not be imposed for filing claims
> objections in violation of Fed. R. Bankr. P. 9011(b), and why the
> apparent Rule 9011(b) violations do not in their totality constitute a
> *fraud upon creditors and the court.  The sanctions to be considered may
> include, but are not limited to: suspension*, other non-monetary
> sanctions designed to deter repetition of such conduct or comparable
> conduct by others similarly situated, and/or monetary sanctions
> commensurate with the dollar amounts of claims improperly sought to
> be stricken and limited to what is sufficient to deter repetition of such
> conduct or comparable conduct by others similarly situated.

*Id*. at 36 of 36 (emphasis supplied).  The Bankruptcy Court pointed out that this

district, as one of a majority of districts, does not view a creditor's failure to attach

a signed application or statements supporting its claim to be a basis for disallowance

of the claim:

> First, if a claim is scheduled by a debtor as undisputed and in an
> amount equal to or greater than the amount in the proof of claim, little,
> if any, documentation is necessary. . . .  Moreover, this Court joins
> other courts which have criticized the tactic of filing an objection to an
> undisputed scheduled claim. . . .  The Court's bar to raising objections

> to claims scheduled as undisputed should not be read as an invitation to
> schedule credit card debt as disputed in the hope of shifting the burden
> back to the creditor.

Order to Show Cause at 7 quoting *In re Moreno*, 341 B.R. 813, 818 (Bankr. S.D. Fla.

2006) (internal citations omitted).

At the October 12, 2011, show-cause hearing, Abad articulated the basis of her

claim objections as lack of documentation, lack of notice of an assignment, failure of

the creditors to demonstrate a chain of assignment of the debt from the original

creditor in violation of Fla. Stat. 559.715, and lack of standing.[1]  Abad also mentioned

other objections which she did not list: that the debtor had already paid his debt to

Candica, and a statute of fraud argument regarding a credit line.

At the end of the hearing the Court stated from the bench that it would

discharge the show cause.  Upon further reflection, however, the Bankruptcy Court

decided to continue the Show Cause hearing.  On October 18, 2011, the Bankruptcy

Court entered an order stating that notwithstanding the rulings made from the bench,

the "Show Cause Hearings Regarding Apparently Bad Faith Claim Objections" would

be continued for October 26, 2011.  12-civ-60033 DE 2-4 at 32-34.  The Bankruptcy

Court warned,

[t]he common orders to show cause which were entered on August 22nd

---

[1] The Bankruptcy Court interpreted all these arguments as "lack of
documentation" in the November 10, 2011 Omnibus Order.  *See* DE 84 in Case No. 11-
14554-BK-JKO at 7 n.3 (11/28/11 Order Denying Emergency Motion for Stay Pending
Appeal, etc.)

and September 12th in these cases have a singular aim - to address what has become a pervasive problem within this district stemming from wholesale unjustified claim objections, and to stop that practice.  Fed. R. Bankr. P. 9011 places an affirmative duty upon attorneys to make a reasonable investigation of the facts and the law before signing and submitting any petition, pleading, motion, or other paper... Attorneys are required to "think first and file later."  The filing of claim objections with little investigation into the facts or law has become commonplace in this district.  To stop this practice, the court will enter a common final sanctions order in all of the matters rather than entertain separate proposed orders submitted by counsel.  That common final order may discharge certain attorneys without sanction while imposing sanctions upon others, but it will consistently address the singular issue at hand, undistracted by much of the tangential discussion which occurred on the record at the October 12th hearing.  In short, attorneys who filed claim objections in violation of Fed. R. Bankr. P. 9011(b) will be sanctioned in accordance with Rule 9011(b):

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.

Fed. R. Bankr. P. 9011(c)(2).  While a certain sanction may be sufficient to deter repetition by an offending attorney in these matters, that very same sanction may not be sufficient to deter comparable conduct by others similarly situated.  The sanctions to be imposed here must deter *those who may choose to take a calculated risk when deciding whether to object to a creditor's claim.*

12-civ-60033, DE 2-5 at 33 (emphasis supplied).  Once again on October 26, 2011,[2] the Bankruptcy Court heard argument of counsel and again took the matter under advisement.  Abad reiterated the same arguments she made at the previous show-cause hearing, including citing Judge Robert Mark's ruling in *In re Orozco*, Case No.

---

[2] The transcripts of the October 12th and 26th hearings are at DE 2-5 at 81-101, 12-60033-CIV.

09-34626-BKC-RAM (Bankr. S.D. Fla. July 20, 2011) (unpublished) which, according to Abad, holds that a debtor's good faith belief that claimant is not the owner or the assignee of the debt is a valid basis to object to a proof of claim.  No evidence was taken and Abad did not testify.

On November 10, 2011, the Bankruptcy Court entered the Omnibus Order which is the subject of the instant appeals.  The Bankruptcy Court states in the Omnibus Order, and in the order staying the sanctions, that none of the objections raised substantive allegations under § 502(b) to disallow the claims.  Therefore the bases articulated by Abad for her claim objections were patently unjustifiable.  The Bankruptcy Court concluded that because "claim objections were easily matched to debt which was scheduled as undisputed," the subject claim objections were made with little investigation into the facts or law.  In light of the fact that no duplicate claim was filed corresponding to the relevant scheduled debt, the Bankruptcy Court found that Abad violated Fed. R. Bankr. P. 9011(b) by filing frivolous objections to the very claims that the debtor himself admitted he owed.  Abad requests that this court reverse and quash the Omnibus Order and reverse the Bankruptcy Court's Order Overruling Debtor's Objections to Claim.

**David Marshall Brown**

### Debtors: the MacFarlands

Debtors Norris and Judy Carol MacFarland ("the MacFarlands") filed their Voluntary Petition for relief pursuant to Chapter 13 of the United States Bankruptcy

Code, and timely filed their Schedules, Statements and Chapter 13 Plan. The MacFarlands, an elderly couple, were confused about which debts they owed to whom and because there was disagreement regarding the nature and obligation surrounding their debts, Brown used the MacFarlands' credit reports to prepare the schedules.

Of the 28 claims filed by creditors, Brown, in his legal opinion, correctly filed objections to 17 claims that failed to attach sufficient documentation in support of their proofs of claim. Brown attended the Consent Calendar for the purpose of informing Trustee, Robin Weiner, Esq. ("Trustee"), of his recommendation regarding each objection. Brown withdrew seven objections and recommended that 10 be sustained and the associated claims be stricken as the alleged creditor responsible for filing each insufficient proof of claim had neither (1) amended its Proof of Claim to provide for sufficient documentation nor (2) contacted Mr. Brown providing sufficient documentation or requesting an extension of time to furnish the same.

As a result of the recommendations provided by Brown, a proposed eOrder for each of these 10 claims was submitted to the Bankruptcy Court for its endorsement. Of the 10 proposed eOrders, the Bankruptcy Court endorsed four of them. The Bankruptcy Court then entered an Order to Show Cause to determine whether 16 of Brown's 17 Objections were made in violation of Rule 9100(b) and whether the Objections, when considered together, constituted fraud upon the Bankruptcy Court and the creditors. The Bankruptcy Court stated:

Each of the above was scheduled as a noncontingent, liquidated, undisputed debt, and each proof of claim contained sufficient information for debtors' counsel to match the claims with the scheduled debts. Nonetheless, the MacFarlands' attorney objected to each claim on the basis that the debt and amount was disputed, and that the proof of claim contained insufficient documentation to substantiate the claim. Debtors' counsel submitted proposed orders striking and disallowing claims when unopposed, and withdrew the claims objections when opposed. The conduct of Debtors' counsel had the appearance of a concerted effort to either avoid reasonable review of the claims register as required by Local Rule 2083–I(B) or to improperly achieve favorable results for his clients. The court accordingly conducted a show-cause hearing on October 12, 2011 . . .

*In re MacFarland*, 462 B.R. at 862. Brown submitted a detailed response to the Show Cause Order [DE 160 in the bankruptcy case file] and explained the background of the case and his rationale for making each objection. Brown explains that he was concerned that if he marked the MacFarland's Schedules as disputed, the Bankruptcy Court would infer a presence of bad faith, so he did decided the best approach would be to mark the Schedules as undisputed but with objections.

In paragraphs 27-33 of his response, Brown argues that there is no binding precedent in the Southern District of Florida upon which to interpret 11 U.S.C. § 502 and the extent to which an alleged creditor must support his Proof of Claim with documentation sufficient to preclude a debtor's objection. Brown states that based on both the language of 11 U.S.C. § 502 and persuasive case law, he believed in good faith that failure to provide adequate documentation is a basis upon which an objection may properly be based.

Brown also points out that his interpretation of 11 U.S.C. § 502(b) is reasonable since the courts are split on whether § 502(b) lists exclusive grounds to sustain objections to claims, and this is a developing area of law.[3]  Further, Brown explains that when determining whether he should object to a Proof of Claim based on insufficient documentation, he considered knowledge gleaned by observing the common practice employed by longstanding Chapter 13 practitioners in the area, and his understanding that the Bankruptcy Court has always been one of "admirable detail."  He states that he had no reason to believe that it would be improper to object to claims which were filed by alleged creditors but supported by weak documentation, or that he was choosing "to take a calculated risk" by doing so.

Brown responds to the Bankruptcy Court's statement that "this district has at least three published opinions . . . that [hold] a creditor's failure to attach a signed application or statements supporting its claim is not a basis for claim disallowance [under 11 U.S.C. § 502]"  by correctly pointing out that one of those opinions is not

_____

[3]  A majority of courts hold that § 502(b) provides the exclusive grounds for disallowance of claims (the "exclusive view").  *In re Pursley*, 451 B.R. 213, 226 (Bkrtcy. M.D. Ga. 2011).  The growing minority view, however, is that noncompliance with the rules regarding proof of claim can lead to disallowance: insufficiency of a proof of claim is a valid ground for objecting; if the claimant does not remedy the deficiency via amendments or at the hearing on the objection, then the claim must be disallowed.  *Id.*  The only Circuit Court of Appeals to address the issue held that lack of documentation was grounds for disallowance.  *In re Kirkland*, 572 F.3d 838 (10th Cir. 2009).  Other cases embracing this "nonexclusive view" include *In re Tran*, 369 B.R. 312 (S.D. Tex. 2007); *In re DePugh,* 409 B.R. 84 (Bankr. S.D. Tex. 2009); *In re King,* 2009 WL 960766 (Bankr. E.D. Va. 2009); *In re Henry*, 311 B.R. 813 (Bankr. W.D. Wash. 2004).

published on either Westlaw or Lexis, and therefore could not possibly provide notice to practitioners, and the other two opinions are merely persuasive authority because they are penned by Judge Robert Mark, another bankruptcy court judge within the district. *In re MacFarland*, 462 B.R. at 880, *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001); *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991). Also significant regarding notice to practitioners, neither of the two obtainable opinions cited by the Bankruptcy Court imposed any sanctions, or even issued a warning regarding filing objections to proofs of claim because those claims were not supported with documentation.

In his Omnibus Order, the Bankruptcy Court wrote, "[b]ut even if those opinions were binding rather than persuasive, it would not have been those opinions which prohibited these objections. It is Rule 9011(b) itself which prohibits such objections. Debtors' counsel made no reasonable inquiry before filing the objections - he made no *basic* inquiry before filing the objections." *In re MacFarland*, 462 B.R. at 863 (emphasis in original).

This Court finds these conclusions by the Bankruptcy Court to be an abuse of discretion because there is insufficient evidence to support a finding of the requisite bad faith. Bankr. S.D. Fla. R. 2090-2(B)(1). The lack of binding case law in the Southern District of Florida regarding the extent to which a creditor must supply documentation to support its claim that it is: (1) the true owner, or servicer, of a claim and (2) entitled to the amount set forth in its associated proof of claim, is an

important factor, among others, in determining the reasonableness of Brown's actions.  At the hearings to Show Cause, the Bankruptcy Court did not take testimony or evidence from Brown (or any of the Appellants) regarding his intent in making the objections.  Brown requests that instead of sanctioning him and his colleagues, the Bankruptcy Court articulate binding authority upon which the legal community can govern itself.  He stresses that "this issue . . . is ripe for the establishment of new, binding law in this Court's jurisdiction."  DE 160 at 9.

**Debtor Patrick S. Lewis**

Patrick S. Lewis ("Lewis") filed his Voluntary Petition for Relief pursuant to Chapter 13 and timely filed his Schedules, Statements and Chapter 13 Plan.  The Petition included Schedule D (Creditors Holding Secured Claims), which listed GMAC Mortgage ("GMAC") as the undisputed creditor who held a mortgage lien in the amount of $463,792.00.  Case No. 10-BK-40253-JKO, DE 15 at 8.  U.S. Bank National Association ("U.S. Bank") filed Proof of Claim 5-1 in the amount of $469,560.83.  The Proof of Claim identified GMAC as the servicing agent for U.S. Bank, so Brown assumed that GMAC signed an assignment on behalf of U.S. Bank as U.S. Bank's servicing agent.  *Id.*, DE 154 at 3.  Brown filed an objection to U.S. Bank's Proof of Claim on the grounds that (1) U.S. Bank was not the proper party in interest pursuant to 11 U.S.C. § 101(10), and (2) Lewis believed the amount listed on the claim was incorrect.  *Id*.  The objection to U.S. Bank's claim was heard on the Consent Calendar.  Neither U.S. Bank, nor GMAC, responded to Lewis' objection.

Due to the fact that Brown was traveling and not available to attend the hearing for the objection to U.S. Bank's Proof of Claim, Mr. Stephen Weinstein, another attorney in the Brown Van Horn, P.A. law firm ("Weinstein") covered the hearing.  Prior to the hearing, Weinstein had the realization that Lewis' Schedule D should identify GMAC's claim as disputed because all parties were confused as to who was the true party of interest.[4]  DE 160 at 3.  Accordingly, on the day of the hearing, Weinstein filed an Amended Schedule D listing the debt owed to U.S. Bank as disputed.  Case No. 10-BK-20453-JKO, DE 133.

Pursuant to the Bankruptcy Court's regular practice, the matter was heard on the Consent Calendar by the Trustee on September 7, 2011.  Despite being properly notified of the hearing, neither U.S. Bank nor GMAC were in attendance and objection to Claim 5-1 was sustained as recommended by the Trustee.  As a result of the Trustee's recommendation, an employee of Brown Van Horn, P.A., submitted a proposed eOrder striking U.S. Bank's Proof of Claim 5-1 in its entirety.  However, the

---

[4]  Brown reports that Weinstein was concerned that if U.S. Bank was the true party holding the interest in the mortgage and possessing a claim against Lewis' property, as the Proof of Claim 5-1 indicated, then GMAC, as the servicer, should not be recognized on Schedule D as the party holding the claim.  12-cv-60015, DE 8 at n.14.  Furthermore, Weinstein was concerned that even if it was legally acceptable to identify GMAC, as servicing agent for U.S. Bank, as the party holding the claim, U.S. Bank (and GMAC as its servicing agent), was not holding the claim at the time Lewis filed his Schedules.  Because the Schedules must reflect the name, mailing address and account number of the entities holding claims as of the date of filing of the petition, Weinstein concluded that Schedule D needed to be amended to indicate GMAC's claim as disputed.  Case No. 10-BK- 40253-JKO, DE 154 at 4.

next day, Chad Van Horn of the Brown Van Horn, P.A. firm, found it appropriate (for an unrelated reason having no bearing on the subject at issue) to withdraw the Amended Schedule D.  Before Brown had the opportunity to file Lewis' Second Amended Schedule D, the Bankruptcy Court entered an Order Overruling Debtor's Objection to Claim 5-1 on the grounds that Brown's objection must be either without evidentiary support or frivolous and as such, there was no basis for his objection to claim.

The Bankruptcy Court subsequently entered an Order to Show Cause.  Brown filed a 19-page Motion to Reconsider[5] the Bankruptcy Court's order overruling the claim objection.  In its Omnibus Order, the Bankruptcy Court stated the Motion to Reconsider "can, without hyperbole, be characterized as meticulously drafted idiocy."  *In re MacFarland*, 462 B.R. at 879.  The Motion to Reconsider explained the confusion regarding Brown's absence from the district, the reasoning behind the amendments[6] and attempted withdrawal of the Schedule, and carefully and thoroughly reiterated the reasoning behind the objection to U.S. Bank's Proof of Claim.

---

[5] Case No. 10-BK-40253-JKO, DE 154.

[6] One reason Weinstein felt it was imperative to amend the Schedule to identify GMAC's claim as disputed was because of the Bankruptcy Court's concern in an earlier Order to Show Cause in the MacFarland case, regarding objections to a claim which was scheduled as undisputed.  Case No. 10-BK-40253-JKO, DE 154 at 5.

In its Omnibus Order, the Bankruptcy Court concluded that Brown

> conferred with counsel for GMAC before the hearing [on the Motion to Reconsider and Order to Show Cause], who was apparently able to convince Debtor's counsel that the reconsideration motion was meritless.  Debtor's counsel accordingly withdrew the reconsideration motion about an hour and a half before the October 26th hearing.  The court was left to address the narrow issue of whether Debtor's counsel violated Fed. R. Bankr. P. 9011(b) by filing the meritless claim objection in objective bad faith.

*In re MacFarland*, 462 B.R. at 879.  The transcript of the hearing shows that Stuart M. Gold, Esq., counsel for creditor U.S. Bank, stated that he "understood Mr. Van Horn's concern.  We were able to explain some stuff to Mr. Van Horn that wasn't readily apparent in our paperwork.  I think we've worked this out."  DE 175 in Case No. 10-BK-40253-JKO.  Mr. Gold further stated that Mr. Brown "had some legitimate concerns . . . I think the motion for reconsideration was filed in good faith."  *Id.*

The Bankruptcy Court rejected these statements by U.S. Bank's counsel and without taking any evidence, entered its Omnibus Order holding that Brown "filed a substantial claim objection in objective bad faith and in violation of Fed. R. Bankr. P. 9011(b) . . ." and that Brown's bad faith behavior constituted "a pattern of not undertaking reasonable investigation into the facts or the law before filing papers with this court . . ."  *In re MacFarland*, 462 B.R. at 885.  Based upon a careful review of the facts, this Court concludes there is an insufficient factual and legal basis to sanction Brown under Rule 9011 and the Bankruptcy Court abused its discretion in doing so.

**Maite L. Diaz**

     <u>**Debtors Gabriel and Madelyn Garcia,[7] Onelia Hurtado[8]**</u>
     <u>**and Eliezer and Rosa Santana[9]**</u>

     The facts relating to all the debtors represented by Diaz are the same, except where noted.  Debtors Gabriel and Madelyn Garcia (collectively along with Onelia Hurtado and the Santanas, "Debtors") filed Voluntary Petitions for relief pursuant to Chapter 13.  Because the Debtors had become overwhelmed by their numerous debts, many of which had been placed in collection, Diaz used Debtors' credit reports to assist in the preparation of their Schedules.  Several alleged creditors filed Proofs of Claim in Debtors' bankruptcy.  Diaz reviewed the claims register and found that in her view, a good number of these alleged creditors failed to attach sufficient documentation in support of their Proofs of Claim, or for various other reasons, Diaz believed it was appropriate to file objections to claims she found insufficient.  All of these objections related to debts which were scheduled as noncontingent, liquidated, and undisputed, and each proof of claim contained sufficient information for Diaz to surmise to which of the scheduled debts the claim probably related.

-------------------

    [7]  The Garcia's debt had become out of control as a result of a period of unemployment.

    [8]  Hurtado's debt had become out of control as a result of a failed career as a realtor and a strained amorous relationship.

    [9]  The Santana's debt had become out of control as a result of a breakdown of their marriage and subsequent separation.

The objections were duly noticed and set for hearing.  In the time between the filing of the objections and the hearing, each alleged creditor took one of three courses of action: (1) the creditor contacted Diaz by telephone or email and furnished Diaz with documentation sufficient to support its claim; (2) the alleged creditor contacted Diaz by telephone or email and requested that Diaz continue the hearing and allow the creditor additional time to secure documentation sufficient to support its claim; or (3) in the majority of the circumstances, the alleged creditor made no attempt to contact Diaz, or otherwise cure the perceived deficiencies in its claim.  If the alleged creditor contacted Diaz and either provided documentation sufficient to support its claim or requested additional time, Diaz made a note to withdraw her objection, or request a continuance.  Only if the alleged creditor failed either to: (1) appear at the hearing; (2) otherwise file documentation sufficient to support its claim or (3) make an attempt to contact Diaz at a time before counsel was asked to make a recommendation regarding the claim at the hearing, would Diaz suggest that the claim be stricken.

Diaz attended the scheduled hearings on her objections.  The majority of the creditors did not appear or otherwise contest her objections, and the matters were resolved on the Court's Consent Calendar for uncontested matters.  After the hearings, Diaz submitted proposed orders to the Bankruptcy Court.  The Bankruptcy Court sustained some, but not all, of the objections to the claims.  On August 22, 2011, the Bankruptcy Court entered an Order to Show Cause to determine whether

Diaz's objections were made in violation of Rule 9011(b) and whether the objections, when considered together, constituted fraud upon the Bankruptcy Court and Debtor's creditors.

In an effort to comply with the Show Cause Order, Diaz met with her clients to discuss the case moving forward evaluating not only the Show Cause Order but the case as a whole. As to the Garcia's and Hurtado, both the debtors and Diaz decided it was best for the client to seek conversion of their case to Chapter 7, in deference to the Court's opinion. At the preliminary hearing held at the September motion calendar, however, the Bankruptcy Court accused Diaz's attempts at remediating the situation as bad faith attempts to escape sanction. Diaz asserts this contention is incorrect because she knew that the conversion would not moot the pending Order to Show Cause. As to the Santana's, they were having difficulty making their Chapter 13 payments due to expenses resulting from the husband's ailing mother, so Diaz and the Santanas decided to wait for the Court's response at the scheduled Show Cause hearing.

## Applicable Law

Pursuant to Florida Statute § 559.715, "the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt."

Claims objections should be based on an inquiry reasonable under the circumstances and should only address that portion of a claim actually in dispute. *In*

*re Felipe*, 319 B.R. 730, 735 n.3 (Bankr. S.D. Fla. 2005).

Bankruptcy Code § 502(b) enumerates nine grounds for the disallowance of a

proof of claim.  11 U.S.C.A. § 502(b)(1-9).[10]  The Bankruptcy Court, and a majority of

_____

[10]  A claim or interest, proof of which is filed under 11 U.S.C. § 501, is deemed
allowed, except to the extent that--
(1) such claim is unenforceable against the debtor and property of the debtor, under
any agreement or applicable law for a reason other than because such claim is
contingent or unmatured;
(2) such claim is for unmatured interest;
(3) if such claim is for a tax assessed against property of the estate, such claim
exceeds the value of the interest of the estate in such property;
(4) if such claim is for services of an insider or attorney of the debtor, such claim
exceeds the reasonable value of such services;
(5) such claim is for a debt that is unmatured on the date of the filing of the petition
and that is excepted from discharge under section 523(a)(5) of this title;
(6) if such claim is the claim of a lessor for damages resulting from the termination of
a lease of real property, such claim exceeds--(A) the rent reserved by such lease,
without acceleration, for the greater of one year, or 15 percent, not to exceed three
years, of the remaining term of such lease, following the earlier of--(i) the date of
the filing of the petition; and(ii) the date on which such lessor repossessed, or the
lessee surrendered, the leased property; plus(B) any unpaid rent due under such
lease, without acceleration, on the earlier of such dates;
(7) if such claim is the claim of an employee for damages resulting from the
termination of an employment contract, such claim exceeds--(A) the compensation
provided by such contract, without acceleration, for one year following the earlier
of--(i) the date of the filing of the petition; or(ii) the date on which the employer
directed the employee to terminate, or such employee terminated, performance
under such contract; plus(B) any unpaid compensation due under such contract,
without acceleration, on the earlier of such dates;
(8) such claim results from a reduction, due to late payment, in the amount of an
otherwise applicable credit available to the debtor in connection with an
employment tax on wages, salaries, or commissions earned from the debtor; or
(9) proof of such claim is not timely filed, except to the extent tardily filed as
permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the
Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit
shall be timely filed if it is filed before 180 days after the date of the order for relief
or such later time as the Federal Rules of Bankruptcy Procedure may provide, and

courts, opine that these grounds are exclusive.  *MacFarland*, 462 B.R. at 879–80; *see also In re Rehman*, 2012 WL 4757801, *5 (Bkrtcy. D. Mass. Oct. 5, 2012) (citing *MacFarland*).  The failure to accompany a proof of claim with the appropriate writing is not one of the reasons listed in section 502(b) for disallowance.  The Bankruptcy Court has held that "[s]ince the failure to attach a writing as required by Rule 3001(c) is not one of the enumerated grounds, it is not in and of itself a basis for disallowance of a claim."  *MacFarland* at 880.

As to any objections to proofs of claims based on credit card debts that have been assigned without notice to the debtor, recent amendments to Bankruptcy Rule 3001(c) (post the Bankruptcy Court's Omnibus Order) now dictate in detail what a creditor must include in a proof of claim which largely renders the current debate moot.[11]   Further amendments to Fed. R. Bank. P. 3001, which took effect on

_____

except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.  11 U.S.C.A. § 502(b).

[11]  Congress amended Rule 3001(c), and the United States Supreme Court decreed that the amendment would take effect on December 1, 2011 (less than one month after the Bankruptcy Court issued its Omnibus Order).  The Committee Note states that subdivision (c) to Rule 3001 "is further amended to add paragraph (3). Except with respect to claims secured by a security interest in the debtor's real property (such as a home equity line of credit), paragraph (3) specifies information that must be provided in support of a claim based on an open-end or revolving consumer credit agreement (such as an agreement underlying the issuance of a credit card).  Because a claim of this type may have been sold one or more times prior to the debtor's bankruptcy, the debtor may not recognize the name of the person filing the proof of claim. Disclosure of the information required by paragraph (3) will assist the debtor in associating the claim with a known account. It will also provide a basis

December 1, 2012, are intended to standardize the proofs of claim and supporting

documentation filed by assignees, and put an end to the steady stream of claim

objections that have resulted from the bulk sale of credit card accounts.[12]  "The

claimant will be required to provide a statement that, among other information,

provides the name of the entity from whom the creditor purchased the account and

the name of the entity to whom the debt was owed at the time of the debtor's last

account transaction."  *In re Richter*, 478 B.R. 30, 47 (Bankr. D. Colo. 2012); *In re*

*Rehman*, 2012 WL 4757801, *7 (Bkrtcy. D. Mass. 2012) (the coming revision will

---

for assessing the timeliness of the claim. The date, if any, on which the account was
charged to profit and loss ("charge-off" date) under subparagraph (A)(v) should be
determined in accordance with applicable standards for the classification and
account management of consumer credit.  A proof of claim executed and filed in
accordance with subparagraph (A), as well as the applicable provisions of subdivisions
(a), (b), (c)(2), and (e), constitutes prima facie evidence of the validity and amount
of the claim under subdivision (f)."

[12]  Subdivision (c) of Rule 3001 was amended in 2012 to add a paragraph
requiring information in support of a claim when the claim is based on an open-end or
revolving consumer credit agreement (such as an agreement underlying the issuance
of a credit card), except one for which a security interest is claimed in the debtor's
real property.  The disclosure of this information was deemed to be necessary
because claims of this type are typically sold one or more times, and the debtor may
not recognize the name of the person filing the claim. The additional information is
intended to assist the debtor in determining the basis for the claim and to provide a
basis for assessing the timeliness of the claim.  The information that is now required
for an open-end or revolving consumer credit agreement includes the following:
1.      The name of the entity from whom the creditor purchased the account,
2.      The name of the entity to whom the debt was owed at the time of the last
        transaction by the account holder,
3.      The date of the last transaction on the account by the account holder,
4.      The date of the last payment on the account, and
5.      The date upon which the account was charged off.

directly address the problem of a debtor's ability to match up the creditor with whom the debtor incurred the obligation and a subsequent owner of the debt who files a claim in a bankruptcy case).

Discussion

In his show cause order, the Bankruptcy Court stated the problem it perceived as a common practice in this district:

An increasingly large volume of Chapter 13 claims objections have proceeded on the Chapter 13 consent calendar[13] in one of two ways:

(1)     no one appears on the creditor's behalf and the creditor's claim is stricken and disallowed; or

(2)     someone appears on the creditor's behalf and the claim objection is withdrawn by debtor's counsel without explanation.

This pattern has caused the court to become concerned that Chapter 13 debtors' attorneys were filing bad faith objections to creditor claims, only to withdraw those objections within the Fed. R. Bank. P. 9011(c)(1)(A) safe harbor period should someone appear for the

_____

[13]  Appellants state that it is common practice for the Bankruptcy Court to ask Trustee, Robin Weiner, Esq., to run through matters scheduled for Motion Calendar to determine whether the scheduled matters can be resolved without going before a judge.  Diaz explains that this delegation of responsibility has not unreasonably given local practitioners the perception that objecting to unsupported proofs of claim is a legal practice condoned by the Bankruptcy Court.  However, because these Chapter 13 Consent Calendars are administered by the standing Chapter 13 Trustee without a judge in the courtroom, the Bankruptcy Court was not fully aware of this practice. Order to Show Cause at 3 (9/12/11).  Brown points out that the speed at which the "Consent Calendar" moves only allows for the person making the recommendation to the trustee to articulate whether the relevant objection should be "sustained and stricken" or "withdrawn."  The trustee asks for no explanation of the respondent's recommendation, nor does the "Consent Calendar" allow for the respondent to make the same.  Case No. 11-BK-13345-JKO, DE 160 at n.9-10.

creditor.

See DE 2-4 at 19 of 36 in 12-60033-CV.  The Bankruptcy Court's purpose in conducting the show cause hearings and issuing his Order Sanctioning Attorneys is clear: to stop the common practice of seeking to strike and disallow a claim in its entirety when any portion of the debt is undisputedly due and owing, and filing "indiscriminate" claims objections for lack of documentation when the debt was scheduled in substantially the same or greater amount.  *In re MacFarland*, 462 B.R. at 881, 883.  "The cases addressed by this Order to Show Cause present essentially baseless claims objections which appear to be shotgun attempts to object to everything and 'see what sticks.' Requiring creditors to attach documentation in response to frivolous claims objections increases abuse and litigation.  *See In re Shank*, 315 B.R. 799, 813 (Bankr. N.D. Ga. 2004).  If there is no substantive objection to the claim, the creditor should not be required to provide further documentation because it serves no purpose other than to decrease the likelihood that a valid claim against the estate will be disallowed on specious grounds."  Case 11-BK-13345-JKO, DE 148 at 8-9

The Bankruptcy Court acknowledges that Rule 3001 of the Federal Bankruptcy Rules of Procedure ("Rule 3001") and the proof of claim form itself, Official Bankruptcy Form 10 ("Official Form 10"), require that when a claim is based on a writing, the writing must accompany the proof of claim.  However, in its Omnibus Order, the Bankruptcy Court admonishes that the failure to include the writing, or any backup documentation, is not grounds for disallowance of the claim.  Rather, the

lack of documentation deprives the proof of claim of the *prima facie* validity

accorded it by Rule 3001(f), and leaves the burden with the creditor to prove the

claim's validity.  *In re MacFarland*, 462 B.R. 857, 881 (Bankr. S.D. Fla. 2011).

However, according to the Bankruptcy Court, a debtor is prohibited from objecting to

an unsupported claim when the debtor has scheduled undisputed debts in amounts

equal to or greater than amount of creditors' proofs of claim, and no other claimant

files a similar claim.  *See MacFarland*, 462 B.R. at 881 and 882, citing *In re Reynolds*,

470 B.R. 138, 145 (Bankr. D. Colo. 2012) (even if lack of supporting documentation

was a permissible basis for disallowing proofs of claim based on a writing, Chapter 13

debtors who had scheduled claims as undisputed in amounts consistent with creditors'

proofs of claim secure the important benefit of being able to discharge whatever

portion of those debts remained unpaid upon completion of their plan.  However,

these debtors are judicially estopped from seeking to have these acknowledged

claims disallowed solely for lack of supporting documentation).

Appellants disagree and maintain that objecting to an unsupported proof of

claim is an appropriate and common strategy employed by the local bankruptcy bar

based on the instructions of Official Form 10 and Rule 3001.  The Bankruptcy Court

also sends tacit approval to practitioners when it routinely allows uncontested

objections to unsupported proofs of claim to be handled on the Standing Chapter 13

trustee's consent calendar.  This delegation of responsibility has given practitioners

the perception that objecting to unsupported proofs of claim is a permitted legal

practice.

There was no binding precedent in this district upon which practitioners could rely to guide them regarding the obvious and real problem debtors face when proofs of claim are made by assignees who are unknown to the debtors.  The reasonableness of this practice is buttressed by Congress' amendment to Fed. R. Bankr. P. 3001(c), which suggests filing objections to proofs of claims filed without supporting documentation was entirely appropriate.

"Poorly documented credit card claims in bankruptcy cases have become such a widespread problem that the Judicial Conference has felt compelled to weigh in on the matter."  *In re S & A Dennis Enterprises, Inc.*, 2011 WL 1457204, *8 (Bkrtcy. W.D. N.C. 2011).  As of December 1, 2011, the Rules Committee promulgated amendments to Rule 3001, requiring the inclusion of supporting documentation.  *In re Rehman* 2012 WL 4757801, 3 (Bkrtcy. D. Mass. 2012).  The confusion in this area is underscored by the amendment which took effect December 1, 2012.[14]

<u>Conclusion</u>

In light of the absence of binding precedent to guide the local bankruptcy bar, the split of authority regarding "exclusivity" or "non-exclusivity," the 2011 and 2012 amendments to the Federal Rules of Bankruptcy Procedure, the Bankruptcy Courts' tacit acceptance of allowing uncontested objections to unsupported proofs of claim

---

[14] *See supra* n.12.

to be handled on the Standing Chapter 13 trustee's consent calendar, and the failure of the Bankruptcy Court to make specific factual findings as to Appellants' conduct, this Court concludes that the Bankruptcy Court abused its discretion in sanctioning Appellants.  A review of the Omnibus Order and the transcripts of the hearings demonstrate insufficient record evidence to support the imposition of sanctions under Rule 9011 and the standard as set forth in *In re Mroz*.  **The Omnibus Order is reversed as to Appellants**.

This case is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 18th day of March, 2013.

KENNETH A. MARRA
United States District Judge